Brown, J.
 

 It will be observed that William Kain, the appellant, maintains towards these proceedings a very peculiar relation. He succeeded to the rights and to some of the obligations of the administratrix, who instituted and conducted them to a sale and a report and a prayer for confirmation. He also unites in his own person such rights to the lands as Augustus W. Clason had at the time of his death, and which he acquired after the sale, the report and prayer for confirmation, and after Clason had interposed and litigated his only objection to the sale, which was, that it was not required to pay the debts of the intestate. He now seeks to arrest the proceedings and prevent the consummation of the sale upon grounds not taken by those to
 
 *169
 
 whose rights and interests he has succeeded, and upon facts and for reasons which may be true now, but which there is no reason to think were true, or existed, at the time the sale was made. Between the time of the sale and the time when his offer was made more than six years had elapsed; and what may have been a very liberal and adequate price in March, 1849, may also have been illiberal and inadequate in August, 1855. Without relying upon the general rise in the value of real property, especially near the city of New-York, it is enough for my present purpose to say that the appellant’s offer has not the slightest tendency to show that the sum bid was not the full and fair value of the property at the time of the sale. His offer tends to show that the property, at the time it was made, was worth the sum bid by the respondent, with the interest and ten per cent thereon, and the expenses of the resale; but it shows nothing more. Whether this difference is attributable to the rise in values generally, the increased demand for this kind of property, or the inadequacy of the respondent’s bid, does not appear. We are thus brought to consider this question: Whether, after a sale, upon a surrogate’s order, which has been fairly and regularly conducted, and the property struck off to a purchaser for a full and sufficient price, an heir-at-law, who takes subject to the statutory lien of the creditors, can, by a litigation upon the state of the debts, postpone the consummation of the sale for an indefinite period, and, if in the mean time the property rises in value, defeat the sale and deprive the purchaser of the benefit of his purchase by an offer to bid an additional ten per cent ? If the property, from any cause, sinks in value, the purchaser is bound by his contract and must accept it; if it rises, it is not for his benefit, but for the profit of him who procrastinates and puts off to a distant day the consummation of the sale. Who would be safe in bidding at a sale under a surrogate’s order if section twenty-nine of the act in regard to such sales can be made the instrument of such injustice? It
 
 *170
 
 seems
 
 to
 
 me
 
 that the
 
 confirmation of
 
 the
 
 report of sale must depend upon the amount bid at the sale, and the real value of the property at that time, and not at any subse quent time. This, I think, will be found to be the true construction of the act. Upon the coming in of the report of sale, section twenty-nine provides that if the surrogate “shall be of opinion that the proceedings were unfair, or that the sum bid is disproportionate to the value, and that a sum exceeding such bid at least ten per cent, exclusive of the expenses of a new sale, may be obtained,
 
 he
 
 shall
 
 vacate
 
 such sale and order another to be had.” To authorize the surrogate to vacate the sale, it must appear to his satisfaction, first, that the proceedings were unfairly
 
 conducted;
 
 or, second, that the sum bid is disproportionate to the value of the property, and
 
 that at
 
 least ten per cent, exclusive of the expenses of the new sale, may be obtained in addition to the sum bid. The two requisites under the second head must exist together. The want of proportion between the sum bid and the real value must be ten per cent at least, and there must be good reason to think the ten per cent will be forthcoming at the resale. If the sum bid is not an inadequate price for the property; if it is not out of proportion to its real value, the sale must be affirmed. It will not be vacated simply upon the ground that some one has been found who will bid the additional ten per cent. In connection with this fact it must also appear that the price bid is inadequate and below the real value of the property. Such an offer would, doubtless, be evidence that the sum bid was below the value, but it would be far from conclusive; because it is conceivable that a person who had missed the opportunity to purchase property for which he had immediate and pressing use might find it his interest to offer ten per cent above or in addition to its fair value, in the hope of obtaining it. A
 
 bona fide
 
 offer of ten per cent in addition to the fair value would be no ground for a resale. The object of the law is not speculation. A sale now and
 
 *171
 
 a resale hereafter, and so often as a bidder may be found who has changed his mind, or an heir or an owner chooses to try another experiment, is entirely foreign to its purpose. If the property is not sold at a sacrifice, but commands a fair and adequate price at the time of the sale, the law has performed its office, and right and justice are maintained between vendor and purchaser.
 

 The view I have taken is in accordance with the judgment of this court in
 
 Delaplaine
 
 v.
 
 Lawrence
 
 (3
 
 Comst.,
 
 301). That was an appeal from the order of the surrogate, directing a resale of the Turtle Bay farm, and it rested mainly, if not entirely, upon the ground that it was a resale of a part and not of the whole of the premises sold. On the return of the proceedings to the surrogate, “ the confirmation of the sale of the Turtle Bay farm was opposed by William Beach Lawrence, one of the heirs-at-law of the decedent, and evidence was adduced before the surrogate tending to show that the aggregate price for which the farm had been sold was disproportionate to its value.” A bond was also executed, approved by and left with'the surrogate, to secure the enhanced price demanded by the act at the resale. Thus both the requisites, which I deem essential to a resale, were presented by the proofs to the surrogate.
 

 The decree of the Supreme Court should be affirmed, with costs.
 

 Selden, J., also delivered an opinion in favor of affirming the order. All the judges concurring,
 

 Order affirmed.